IN THE SUPREME COURT OF NORTH CAROLINA

 2022-NCSC-23

 No. 18A21

 Filed 11 March 2022

M.E.

 v.
T.J.

 Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of

the Court of Appeals, 275 N.C. App. 528 (2020), reversing the ruling entered 7 June

2018 by Judge Anna Worley in the District Court of Wake County, and remanding

for further proceedings. Heard in the Supreme Court on 5 January 2022.

 Scharff Law Firm, PLLC, by Amily McCool; ACLU of North Carolina Legal
 Foundation, by Irena Como and Kristi L. Graunke; and Patterson Harkavy
 LLP, by Christopher A. Brook, for plaintiff-appellee.

 Nelson Mullins Riley & Scarborough LLP, by Lorin J. Lapidus, D. Martin
 Warf, and G. Gray Wilson, for defendant-appellant.

 Joshua H. Stein, Attorney General, by Ryan Y. Park, Solicitor General, for
 State of North Carolina and Governor Roy Cooper, amici curiae.

 Brooks, Pierce, McLendon, Humphrey, & Leonard, LLP, by Sarah M. Saint and
 Eric M. David; and Kathleen Lockwood and Nisha Williams, for North
 Carolina Coalition Against Domestic Violence, amicus curiae.

 Poyner Spruill LLP, by Andrew H. Erteschik, John Michael Durnovich, N.
 Cosmo Zinkow; and Robinson, Bradshaw, & Hinton, P.A., by Stephen D.
 Feldman, Mark A. Hiller, and Garrett A. Steadman, for Legal Aid of North
 Carolina, The North Carolina Justice Center, and The Pauli Murry LGBTQ+
 Bar Association, amici curiae.
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 Womble Bond Dickinson (US) LLP, by Kevin A. Hall, Samuel B. Hartzell, and
 Ripley Rand, for Former District Court Judges, amicus curiae.

 HUDSON, Justice.

¶1 For well over a century, North Carolina courts have abided by the foundational

 principle that administering equity and justice prohibits the elevation of form over

 substance. See, e.g., Currie v. Clark, 90 N.C. 355, 361 (1884) (“This would be to

 subordinate substance to form and subserve no useful purpose.”); Moring v. Privott,

 146 N.C. 558, 567 (1908) (“Equity disregards mere form and looks at the substance of

 things.”); Fidelity & Casualty Co. v. Green, 200 N.C. 535, 538 (1931) (“To hold

 otherwise, we apprehend, would be to exalt the form over the substance.”). In

 alignment with this principle, our Rules of Civil Procedure are intended to facilitate

 access to justice, not obstruct it. See Pyco Supply Co. v. American Centennial Ins. Co.,

 321 N.C. 435, 443 (1988) (noting that “deny[ing] plaintiff its day in court simply for

 its imprecision with the pen . . . would be contrary to the purpose and intent of . . .

 the modern rules of civil procedure.”). Indeed, “it is the essence of the Rules of Civil

 Procedure that decisions be had on the merits and not avoided on the basis of mere

 technicalities.” Mangum v. Surles, 281 N.C. 91, 99 (1972).

¶2 This principle holds particular salience in the realm of Domestic Violence

 Protective Orders (DVPO). Survivors of domestic violence who turn to courts for

 protection typically do so shortly after enduring physical or psychological trauma,
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 and without the assistance of legal counsel. Maria Amelia Calaf, Breaking the Cycle:

 Title VII, Domestic Violence, and Workplace Discrimination, 21 Law & Ineq. 167, 170

 (2003) (noting that “the effects [of domestic violence] extend beyond the physical

 harms, causing substance abuse, severe psychological trauma, and stress-related

 illnesses.”); Julia Kim & Leslie Starsoneck, North Carolina District Courts’ Response

 to Domestic Violence 57 (Dec. 2007), https://www.nccourts.gov/assets/inline-

 files/dv_studyreport.pdf [hereinafter Kim & Starsoneck] (noting that “generally most

 50B plaintiffs and defendants appear pro se.”). Accordingly, “[t]he procedures under

 N.C.[G.S.] § 50B-2 are intended to provide a method for trial court judges or

 magistrates to quickly provide protection from the risk of acts of domestic violence by

 means of a process which is readily accessible to pro se complainants.” Hensey v.

 Hennessy, 201 N.C. App. 56, 63 (2009).

¶3 Today, we apply these longstanding principles here, where plaintiff struck

 through and wrote “I do not want to dismiss this action” on a Notice of Voluntary

 Dismissal form that she had filed thirty-nine minutes previously, after learning that

 she could, in fact, proceed with her original Chapter 50B DVPO complaint. Defendant

 contends, inter alia, that this handwritten amendment could not revive plaintiff’s

 previously dismissed complaint, and therefore that the trial court erred in exercising

 jurisdiction over the subsequent hearing. Holding so, however, “would be to exalt the

 form over the substance.” Fidelity & Casualty Co., 200 N.C. at 538.
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

¶4 Accordingly, we hold that the district court did not err in determining that it

 had subject matter jurisdiction to allow plaintiff to proceed with her Chapter 50B

 DVPO action. Further, we hold that plaintiff’s constitutional argument was properly

 preserved for appellate review, and that defendant’s Rule 19(d) necessary joinder

 argument was not properly preserved for appellate review. Finally, we note that the

 merits of the Court of Appeals’ ruling that N.C.G.S. § 50-B(1)(b)(6)’s exclusion of

 complainants in same-sex dating relationships from DVPO protection is

 unconstitutional were not at issue before this Court, and therefore stand undisturbed

 and maintain normal precedential effect. We therefore modify and affirm the ruling

 of the Court of Appeals below reversing the trial court’s denial of plaintiff’s Chapter

 50B complaint.

 I. Factual and Procedural Background

 A. Chapter 50B Filings and District Court Rulings

¶5 Plaintiff M.E. and defendant T.J., both women, were in a dating relationship

 that ended badly. After plaintiff ended the relationship on 29 May 2018, she alleged

 that defendant became verbally and physically threatening toward plaintiff,

 including attempting to force her way into plaintiff’s house and needing to be removed

 by police. On the morning of 31 May 2018, plaintiff, accompanied by her mother, went

 to the Wake County Clerk of Superior Court office seeking the protections of a

 Domestic Violence Protective Order and an ex parte temporary DVPO pursuant to
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 N.C.G.S. Chapter 50B. After plaintiff explained her situation to staff members at the

 clerk’s office, they provided her with the appropriate forms to file a Chapter 50B

 “Complaint and Motion for Domestic Violence Protective Order” (AOC-CV-303),

 which include a section to request a temporary “Ex Parte Domestic Violence Order of

 Protection.” See N.C.G.S. § 50B-2(d) (2021) (establishing that “[t]he clerk of superior

 court of each county shall provide pro se complainants all forms that are necessary

 or appropriate to enable them to proceed pro se pursuant to this section.”).

¶6 Plaintiff then filled out the Chapter 50B forms she had been given. Plaintiff

 checked Box 4 of the form, which alleges that “[t]he defendant has attempted to cause

 or has intentionally caused me bodily injury; or has placed me or a member of my

 family or household in fear of imminent serious bodily injury or in fear of continued

 harassment that rises to such a level as to inflict sustained emotional distress . . .” In

 the subsequent space for further details, plaintiff wrote:

 May 29th 2016[.] Became aggressive after stating the
 relationship was over. Had to push her back twice and lock
 her out of my home then placed 911 call. Officer arrived
 and she appeared to have left. She was hiding in back yard.
 Attempted to force entry into the home. 911 was called
 again. Defendant has not stopped attempting to contact
 me.

 Plaintiff also checked Box 6, indicating that “I believe there is danger of serious and

 imminent injury to me or my child(ren).” Finally, plaintiff checked Box 9, indicating

 that “[t]he defendant has firearms and ammunition as described below.” Below,
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 plaintiff wrote “access to father[’]s gun collection[.]”

¶7 Plaintiff requested “emergency relief” by way of “an Ex Parte Order before

 notice of a hearing is given to the defendant.” Plaintiff further requested that the

 court order Defendant: “not to assault, threaten, abuse, follow, harass, or interfere

 with me[;]” “not to come on or about . . . my residence [or] . . . the place where I work[;]”

 “[to] have no contact with me[;]” “[not] possess[ ] or purchas[e] a firearm[;]” and take

 “anger management classes.” After filing this paperwork, plaintiff was instructed by

 the staff members to return to court later that day for her hearing.

¶8 When plaintiff returned to court for her hearing, the trial court “informed [her]

 that because both she and [d]efendant were women, and only in a ‘dating’ . . .

 relationship, N.C.G.S. § 50B-1(b)(6) did not allow the trial court to grant her an ex

 parte DVPO or any other protections afforded by Chapter 50B.” M.E., 275 N.C. App.

 at 533. Indeed, N.C.G.S. § 50B-1(a) limits DVPO protection to those who are in or

 have been in a “personal relationship,” and N.C.G.S. § 50B-1(b) subsequently defines

 “personal relationship” as “a relationship wherein the parties involved:”

 (1) Are current or former spouses;

 (2) Are persons of opposite sex who live together or have
 lived together;

 (3) Are related as parents and children . . . ;

 (4) Have a child in common;

 (5) Are current or former household members; [or]
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 (6) Are persons of the opposite sex who are in a dating
 relationship or have been in a dating relationship.

 (emphasis added). As such, the statute excludes from DVPO eligibility any person,

 like plaintiff, who is or was in a same-sex dating relationship. Instead of seeking a

 DVPO under Chapter 50B, trial court informed plaintiff

 that she could seek a civil ex parte temporary no-contact
 order and a permanent civil no-contact order, pursuant to
 Chapter 50C. See N.C.G.S. § 50C-2 (2017). Chapter 50C
 expressly states that its protections are for “persons
 against whom an act of unlawful conduct has been
 committed by another person not involved in a personal
 relationship with the person as defined in G.S. 50B-1(b).”
 N.C.G.S. § 50C-1(8) (2017) (emphasis added).

 M.E., 275 N.C. App. at 533. Notably, however, unlike DVPOs under Chapter 50B, no-

 contact orders under Chapter 50C do not allow the trial court to place any limits upon

 the defendant’s right to possess a weapon.

¶9 Accordingly, plaintiff returned to the clerk’s office and explained to staff

 members what the judge had told her. Staff members then gave plaintiff a new stack

 of forms to complete, including the Chapter 50C forms and a notice of voluntary

 dismissal of her previous Chapter 50B complaint. Plaintiff filled out the forms and

 gave them back to the staff members, who filed them. Plaintiff’s notice of voluntary

 dismissal was filed-stamped 3:12 p.m.

¶ 10 Shortly thereafter, after a conversation among the staff, staff members

 informed plaintiff that she could still request a DVPO under Chapter 50B even if the
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 trial court was going to deny it. Staff members then gave the original file-stamped

 notice of voluntary dismissal back to plaintiff. Plaintiff struck through the notice and

 wrote on it: “I strike through this voluntary dismissal. I do not want to dismiss this

 action[.]” Plaintiff then returned the form to the staff, who wrote “Amended” at the

 top and refiled it. The amended form was file-stamped a second time at 3:51 p.m.,

 thirty-nine minutes after the original filing.

¶ 11 Plaintiff’s four actions (Chapter 50B ex parte DVPO, Chapter 50B permanent

 DVPO, Chapter 50C ex parte Temporary No-Contact Order for Stalking, and Chapter

 50C permanent Temporary No-Contact Order for Stalking) were then heard at the

 afternoon session of district court that same day, 31 May 2018. Plaintiff was present

 without counsel at this hearing; defendant was not present. The court had before it

 the full record of the case, including plaintiff’s amended voluntary dismissal form.

 The court “denied [p]laintiff’s request for a Chapter 50B ex parte DVPO, but set a

 hearing date of 7 June 2018 for a hearing on [p]laintiff’s request for a permanent

 DVPO.” M.E., 275 N.C. App. at 533. Specifically, the trial court concluded in its order

 that: “allegations are significant but parties are in same[-]sex relationship and have

 never lived together, [and] therefore do not have relationship required in statute.”

 The trial court did, however, grant plaintiff’s ex parte request pursuant to Chapter

 50C by entering a “Temporary No-Contact Order for Stalking or Nonconsensual

 Sexual Conduct” that same day. See N.C.G.S. § 50C-6(a) (2021).
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 In the ex parte 50C Order, the trial court found as fact that
 “plaintiff has suffered unlawful conduct by defendant in
 that:” “On 5/29/18, defendant got physically aggressive and
 was screaming in plaintiff’s face; defendant then left after
 LEO (law enforcement officers) were called; after LEO left,”
 defendant “attempted to re-enter plaintiff’s house; LEO
 returned to remove defendant from plaintiff’s house; since
 that date, defendant has repeatedly called plaintiff, texted
 plaintiff from multiple numbers, and contacted plaintiff’s
 friends and family.” The trial court found that defendant
 “continues to harass plaintiff,” and that “defendant
 committed acts of unlawful conduct against plaintiff.” The
 trial court concluded that the “only reason plaintiff is not
 receiving a 50B DVPO today” is because plaintiff and
 defendant had been “in a same[-]sex relationship and do
 not live together,” and that N.C.G.S. § 50B-1(b), as plainly
 written, requires the dating relationship to have consisted
 of people of the “opposite sex.”

 M.E., 275 N.C. App. at 534 (cleaned up).

¶ 12 On 7 June 2018, the trial court conducted its subsequent hearing on plaintiff’s

 Chapter 50B and Chapter 50C permanent motions. Plaintiff appeared with counsel

 at this hearing; defendant appeared pro se. Here again, the trial court enjoyed the

 benefit of the full case record, including plaintiff’s amended voluntary dismissal form.

 First, regarding the Chapter 50B complaint, “[d]efendant consented to an

 amendment to the order to indicate her relationship with [p]laintiff was one ‘of same

 sex currently or formerly in dating relationship.’ ” Id. at 535. The trial court then

 stated: “I do not have a complaint . . . that would survive a Rule 12 motion [to

 dismiss]” because the plain language of N.C.G.S. § 50B-1(b)(6) does not include same-

 sex dating relationships within its definition of covered “personal relationships.” The
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

trial court and plaintiff’s counsel then engaged in the following exchange:

 [Plaintiff’s counsel]: Your honor, with that amended, I
 understand what you already said, that you don’t believe it
 would survive a motion to dismiss. However, . . . we do feel
 at this point that [plaintiff] should be allowed to proceed
 with the Domestic Violence Protective Order, that it’s—the
 statute, that 50B, is unconstitutional as it’s written post
 the same-sex marriage equality case from the Supreme
 Court in Obergefell and that there’s no rational basis at this
 point to have a statute that limits dating relationships to
 folks of opposite sex. So we would ask that Your Honor
 consider allowing [plaintiff] to proceed with her Domestic
 Violence Protective Order case.

 [The court]: Do you have any precedent?

 [Plaintiff’s counsel]: Not in North Carolina.

 [The court]: Other than the Obergefell case.

 [Plaintiff’s counsel]: No, Your Honor, not in North
 Carolina.

 [The court]: In anywhere else that has a similar statute?

 [Plaintiff’s counsel]: Your Honor[,] . . . South Carolina
 recently just overturned their statute that was written
 similarly.

 [The court]: In what procedure?

 [Plaintiff’s counsel]: In a Domestic Violence Protective
 Order procedure.

 [The court]: By what court?

 [Plaintiff’s counsel]: Either their court of appeals or their
 supreme court. Not by a district court, Your Honor. Yes, I
 believe it was a court of appeals case.
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 [The court]: And in checking the legislative history, when
 was the last time our legislature addressed this?

 [Plaintiff’s counsel]: Your Honor, our legislature has
 amended 50B for different reasons, but they have not
 amended the personal relationship categories any time in
 the recent past that I can recall. And, your honor, we’ve
 explained to [plaintiff], certainly, the bind that the [c]ourt
 is in in being bound by the language of the statute.

 [The court]: Without a more expansive argument on
 constitutionality, I won't do it. I think there is room for that
 argument. I think that with some more presentation that
 maybe we could get there, but I don’t think on the simple
 motion that I’m ready to do that.

 [Plaintiff’s counsel]: Thank you, Your Honor. Then with the
 [c]ourt’s denial of the plaintiff’s 50B action, then we would
 like to proceed with the 50C.

 [The court]: Okay.

¶ 13 In its subsequent form order, the trial court ruled that:

 plaintiff has failed to state a claim upon which relief can be
 granted pursuant to the statute, due to the lack of [a]
 statutorily defined personal relationship. . . . [H]ad the
 parties been of opposite genders, those facts would have
 supported the entry of a Domestic Violence Protective
 Order (50B).

 N.C.G.S. [§] 50B was last amended by the legislature in
 2017 without amending the definition of “personal
 relationship” to include persons of the same sex who are in
 or have been in a dating relationship. This recent
 amendment in 2017 was made subsequent to the United
 States Supreme Court decision in Obergefell v. Hodges, 576
 U.S. [664,] (2015), and yet the legislature did not amend
 the definition of personal relationship to include dating
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 partners of the same sex.

 Accordingly, the trial court dismissed plaintiff’s Chapter 50B DVPO motion.

¶ 14 Later, the trial court issued a subsequent written order regarding plaintiff’s

 Chapter 50B DVPO motion. There, the trial court concluded the following:

 2. The [p]laintiff, through her counsel, argued that she
 should be allowed to proceed on her request for a [DVPO]
 because the current North Carolina General Statute 50B-
 1(b) is unconstitutional after the United States Supreme
 Court decision in Obergefell v. Hodges and that there is no
 rational basis for denying protection to victims in same-sex
 dating relationships who are not spouses, ex-spouses, or
 current or former household members.

 3. North Carolina General Statute 50B was passed by the
 North Carolina General Assembly in 1979 and later
 amended on several occasions. It states that an aggrieved
 party with whom they have a personal relationship may
 sue for a [DVPO] in order to prevent further acts of
 domestic violence. The question for the [c]ourt is how a
 personal relationship is defined. North Carolina General
 Statute 50B-1 states: “for purposes of this section, the term
 ‘personal relationship’ means wherein the parties involved:
 (1) are current or former spouses; (2) are persons of
 opposite sex who live together or have lived together; (3)
 are related as parents and children, including others acting
 in loco parentis to a minor child, or as grandparents and
 grandchildren. For purposes of this subdivision, an
 aggrieved party may not obtain an order of protection
 against a child or grandchild under the age of 16; (4) have
 a child in common; (5) are current or former household
 members; (6) are persons of the opposite sex who are in a
 dating relationship or have been in a dating relationship.”
 ....

 4. This definition prohibits victims of domestic violence in
 same sex dating relationships that are not spouses, ex-
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 spouses, or current of former household members from
 seeking relief against a batterer under Chapter 50B.

 5. The [c]ourt must consider whether it has jurisdiction to
 create a cause of action that does not exist and to enter an
 order under this statute when the statute specifically
 excludes it. The difficult answer to this question is no, it
 does not. The General Assembly has the sole authority to
 pass legislation that allows for the existence of any
 domestic violence protective order. The legislature has not
 extended this cause of action to several other important
 family relationships including siblings, aunts, uncles,
 “step” relatives, or in-laws.

 6. In this context, the [c]ourts only have subject matter
 jurisdiction and the authority to act and enjoin a defendant
 when the legislature allows it. On numerous occasions the
 Court of Appeals has stricken orders entered by the
 District Court that do no[t] include proper findings of fact
 or conclusions of law that are necessary to meet the statute.
 [ ] Defendant must be on notice that a cause of action exists
 under this section when the act of domestic violence is
 committed. The [c]ourt cannot enter a [DVPO] against a
 [d]efendant when there is no statutory basis to do so. In the
 case before the [c]ourt, the [d]efendant had no such notice.

 IT IS THEREFORE ORDERED, ADJUDGED, AND
 DECREED as follows:

 1. The [p]laintiff has failed to prove grounds for issuance
 of a [DVPO] as [p]laintiff does not have a required
 “personal relationship” with the [d]efendant as required
 by North Carolina General Statute [Chapter] 50B.

¶ 15 The trial court did, however, grant plaintiff’s Chapter 50C motion for a No-

 Contact Order for Stalking or Nonconsensual Sexual Conduct, ordering defendant

 not to “visit, assault, molest, or otherwise interfere with the plaintiff” for one year
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 from the date issued, 7 June 2018.

¶ 16 On 29 June 2018, plaintiff appealed the trial court’s denial of her DVPO motion

 to the North Carolina Court of Appeals. In response, defendant sent a letter to

 plaintiff’s counsel and the trial court that: denied that she and plaintiff were in a

 dating relationship; requested that the Court of Appeals not hear the case; asserted

 that “the LGBT community is asking for special treatment[ ] in this proceeding” and

 that “[t]hey should not be given equal access to protection under law as heterosexual

 relationships[;]” and emphasized that she did not want to be involved in the appeal.

 B. Court of Appeals

¶ 17 Before the Court of Appeals, plaintiff argued “that the trial court’s denial of

 her request for a DVPO violated [her] constitutional rights protected by the Due

 Process and Equal Protection Clauses of the Fourteenth Amendment [of the United

 States Constitution], as well as the associated provisions of the North Carolina

 Constitution.” M.E., 275 N.C. App. at 538.

¶ 18 The Court of Appeals also allowed several parties to file amicus curiae briefs

 in favor of the plaintiff. These amici included the Attorney General of North Carolina,

 who submitted a brief on behalf of the State seeking “to vindicate the State’s powerful

 interests in safeguarding all members of the public from domestic violence.” Id.

¶ 19 Defendant did not file an appellate brief, and no amici sought to file briefs

 contesting plaintiff’s arguments on appeal.
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 There were also no motions filed by any entity of the State
 to submit an amicus brief, or otherwise intervene in th[e]
 action, for the purpose of arguing in favor of the
 constitutionality of the Act. Therefore, [the Court of
 Appeals], on its own motion and by order entered 3 May
 2019, appointed an amicus curiae (“Amicus”), to brief an
 argument in response to [p]laintiff’s arguments on appeal.

 Id.

¶ 20 On 31 December 2020, the Court of Appeals filed an opinion in which it agreed

 with plaintiff’s claims under both the North Carolina and United States constitutions.

 Accordingly, the Court of Appeals reversed the trial court’s denial of Plaintiff’s

 complaint for a Chapter 50B DVPO and remanded for entry of an appropriate order.

 Id. at 590. Further, the court explicitly stated that its holding applied with equal force

 “to all those similarly situated with Plaintiff who are seeking a DVPO pursuant to

 Chapter 50B; that is, the ‘same-sex’ or ‘opposite sex’ nature of their “dating

 relationship” shall not be a factor in the decision to grant or deny a petitioner’s DVPO

 claim under the Act.” Id.

¶ 21 Judge Tyson dissented. Id. Specifically, the dissent would have held that

 plaintiff’s appeal was not properly before the court because of five purported

 jurisdictional and procedural defects: (1) plaintiff’s filing of a voluntary dismissal of

 her 50B complaint; (2) plaintiff’s failure to subsequently file a post-dismissal Rule 60

 motion; (3) plaintiff’s failure to argue and preserve any constitutional issue for

 appellate review; (4) plaintiff’s failure to join necessary parties; and (5) plaintiff’s
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 failure to comply with Rule 3 to invoke appellate review. Id. (Tyson, J., dissenting).

 Additionally, the dissent asserted that the majority’s dismissal of the arguments of

 the appointed amicus curiae regarding the trial court’s jurisdiction was erroneous.

¶ 22 First, the dissent asserted that plaintiff’s filing of her voluntary dismissal of

 her previous 50B complaint extinguished the trial court’s jurisdiction over that

 action. Id. at 591–92 (Tyson, J., dissenting). The dissent would have held that

 plaintiff’s informal nullification of the voluntary dismissal did not properly revive her

 claim—she instead should have re-invoked the district court’s jurisdiction with a new

 complaint. Id. at 592 (Tyson, J., dissenting).

¶ 23 Second, and as an alternative to filing a new complaint, the dissent asserted

 that plaintiff should have filed a Rule 60(b) motion to seek to revive the dismissed

 complaint. Id. (Tyson, J., dissenting). Without a refiling or a 60(b) motion, the dissent

 contended, plaintiff’s complaint was extinguished by her voluntary dismissal. Id. at

 593 (Tyson, J., dissenting).

¶ 24 Third, the dissent asserted that plaintiff did not properly preserve her

 constitutional argument for appellate review. Id. at 593–94 (Tyson, J., dissenting).

 The dissent would have instead held that plaintiff counsel’s reference to Obergefell

 did not adequately raise a constitutional question, and, in any event, the trial court

 did not rule on the act’s constitutionality, so that plaintiff may not now argue on

 appeal that the Act is unconstitutional. Id. at 594 (Tyson, J., dissenting).
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

¶ 25 Fourth, the dissent would have held that, because this is a civil action

 challenging the validity of a North Carolina statute, the Speaker of the House of

 Representatives and the President Pro Tempore of the Senate must be joined as

 defendants under Rule 19(d) of the North Carolina Rules of Civil Procedure. Id. at

 595 (Tyson, J., dissenting). Separate from and addition to the trial court’s lack of

 subject matter jurisdiction, then, the dissent asserted that no further action or review

 is proper until this statutory defect is cured. Id. (Tyson, J., dissenting).

¶ 26 Fifth, the dissent noted that plaintiff’s trial counsel’s hard copy of the notice of

 appeal was filed with the clerk of superior court and bore no manuscript signature.

 Id. at 596 (Tyson, J., dissenting). Accordingly, the dissent asserted, the notice of

 appeal is defective under N.C. R. App. P. 3(d), which requires that a notice of appeal

 be signed by the counsel of record. Id. (Tyson, J., dissenting).

¶ 27 Finally, the dissent took issue with the majority’s failure to review and

 dismissal of the arguments regarding subject matter jurisdiction raised by the

 appointed amicus curiae. Id. at 597 (Tyson, J., dissenting). The dissent asserted that

 amicus’ supplemental filing and motion to dismiss for lack of jurisdiction were vital

 and should have been included in the record on appeal. Id. at 597–99 (Tyson, J.,

 dissenting).
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

¶ 28 In sum, the dissent would have held that no appeal was actually pending before

 the court due to the trial court’s lack of jurisdiction, among other procedural defects.

 Id. at 599–600 (Tyson, J., dissenting).

 C. Present Appeal

¶ 29 On 11 January 2021, defendant, now represented by the former court-

 appointed amicus counsel, filed a notice of appeal in this Court based on the Court of

 Appeals dissent.

¶ 30 First, defendant asserts that the trial court and the Court of Appeals lacked

 proper jurisdiction due to plaintiff’s voluntary dismissal of the Chapter 50B complaint

 and plaintiff’s failure to include the dismissal in the record on appeal, on the basis

 that plaintiff’s Chapter 50B DVPO complaint was completely extinguished upon the

 filing of the notice of voluntary dismissal at 3:12 p.m. on 31 May 2018. Accordingly,

 defendant asserts, because plaintiff never formally filed a new Chapter 50B

 complaint and no request for Rule 60(b) relief was sought or granted by the trial court,

 “the action was rendered moot and the [trial] court was divested of subject matter

 jurisdiction to proceed with the merits disposition.” Defendant further contends that

 because the trial court lacked subject matter jurisdiction on the Chapter 50B action,

 its subsequent order on the action was void ab initio.

¶ 31 Correspondingly, defendant asserts that when plaintiff did not include the

 notice of voluntary dismissal form in her record on appeal, she “failed to meet her
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 burden of establishing jurisdiction of the [trial] court and Court of Appeals by

 omitting a court paper essential to the determination of whether such jurisdiction

 existed.” Independent of this omission, though, defendant contends that the Court of

 Appeals had a duty to evaluate its own appellate jurisdiction over plaintiff’s

 purported appeal before proceeding to a disposition on the merits. Defendant argues

 that “by deciding an appeal with a blind eye towards” a missing jurisdictional

 document, the [Court of Appeals] majority failed to carry out its duty to properly

 examine [its own] jurisdiction.”

¶ 32 Second, defendant asserts that plaintiff failed to specifically preserve the

 constitutional issue for review by the Court of Appeals pursuant to Rule 10(a) of the

 North Carolina Rules of Appellate Procedure, or to obtain a ruling from the trial court

 on the issue upon the party’s request, objection, or motion.” Here, defendant contends,

 plaintiff’s “vague constitutional reference” did not properly specify the grounds of her

 objection, and the trial court “confined its ruling to non[-]constitutional grounds.”

 Accordingly, defendant asserts, the Court of Appeals erred in considering plaintiff’s

 constitutional argument.

¶ 33 Third, defendant contends that the Court of Appeals ruling must be vacated

 and remanded for the mandatory joinder of the North Carolina General Assembly

 under Rule 19(d) of the North Carolina Rules of Civil Procedure. Defendant notes

 that Rule 19(d) requires that
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 [t]he Speaker of the House of Representatives and the
 President Pro Tempore of the Senate, as agents of the State
 through the General Assembly, must be joined as
 defendants in any civil action challenging the validity of a
 North Carolina Statute or provision of the North Carolina
 Constitution under State or federal law.

 Echoing the reasoning first raised in the Court of Appeals dissent, defendant

 contends that “[b]ecause plaintiff has challenged the constitutionality of N.C.G.S. §

 50B-1(b)(6), the President Pro Tempore of the Senate and the Speaker of the House

 of Representatives are necessary parties and ‘must be joined as defendants’ in the

 civil action.” “Consequently,” defendant argues, “no disposition on appeal or before

 the [trial] court can occur until mandatory joinder is completed as provided by

 statute.”

¶ 34 In response, plaintiff first argues that the trial court had proper jurisdiction to

 hear her DVPO complaint and motions where, at the suggestion of court staff, she

 quickly withdrew a notice of voluntary dismissal filed mistakenly or inadvertently

 because she wished to continue prosecuting her case. Plaintiff claims that defendant

 waived her objection regarding the notice of voluntary dismissal when she failed to

 raise it in the trial court or the Court of Appeals. In any event, plaintiff contends, the

 trial court had authority and discretion to construe plaintiff’s filings in her favor and

 permit amendment as needed to promote justice where plaintiff was proceeding pro

 se in a domestic violence action. To prevent injustice and inefficiency, plaintiff

 asserted, “trial courts have discretion to take steps to protect litigants poised to
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 relinquish their cases, particularly where those litigants are vulnerable.”

¶ 35 Further, plaintiff asserts, the trial court had inherent authority to grant

 plaintiff relief under Rule 60(b) in the interest of justice. Although plaintiff’s amended

 notice of dismissal was not styled as a formal 60(b) motion, plaintiff contends that it

 was “nonetheless sufficient for the trial court to award her equitable relief from the

 unintended dismissal under” that rule because it met the substantive requirements

 of that rule, namely that it was filed inadvertently or mistakenly, and was quickly

 fixed.

¶ 36 Second, plaintiff addresses defendant’s preservation argument. As an initial

 matter, plaintiff again argues that by failing to raise objections to constitutional

 preservation below, defendant waived those objections. Indeed, plaintiff notes, in

 Defendant’s lone submission during the appellate process (the letter to the trial court

 after its ruling), defendant herself briefly engaged in the constitutional merits

 without objecting to preservation. But even if defendant has not waived her

 preservation challenge, plaintiff argues, the constitutional issue was properly

 preserved. Specifically, plaintiff contends that the record makes clear that the trial

 court had notice of the constitutional issue before it and ruled on it, which is sufficient

 to preserve it for appeal. Plaintiff agues that her counsel expressly preserved the

 constitutional issue by mentioning Obergefell by name, arguing that the statute was

 unconstitutional because there was no rational basis supporting the exclusion of
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 same-sex couples, and noting a recent South Carolina Supreme Court case raising

 the same constitutional issues. Further, plaintiff asserts, the trial court ruled on the

 constitutional issue where it expressly engaged with the issue both on the record

 during oral argument and in its final written order before denying the DVPO motion.

¶ 37 Third and finally, plaintiff addresses defendant’s joinder challenge, arguing

 first that Defendant waived her joinder defense where she failed to raise it in either

 the trial court or the Court of Appeals. Even if defendant has not waived her objection

 to joinder, though, plaintiff argues that joining legislative leaders is not required here

 because actions under Chapter 50B are not “civil actions challenging the validity of a

 North Carolina statute” under Rule 19(d). Rather, plaintiff asserts that her Chapter

 50B complaint was brought for the sole purpose of obtaining a DVPO, and the as-

 applied constitutional question was raised merely in defense of the trial court’s

 statutory jurisdiction to hear the claim of a person in a same-sex dating relationship.

¶ 38 Finally, this Court allowed several amici to file briefs, including: (1) North

 Carolina Solicitor General Ryan Park, on behalf of the State; (2) the North Carolina

 Coalition Against Domestic Violence; (3) Legal Aid of North Carolina, the North

 Carolina Justice Center, and the Pauli Murray LGBTQ+ Bar Association; and (4) ten

 former North Carolina District Court judges. All amicus briefs filed supported the

 ruling of the Court of Appeals and plaintiff’s positions on appeal.
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 II. Analysis

¶ 39 We now consider each of defendant’s claims before this Court. As conclusions

 of law, each of the issues raised by defendant “are reviewed de novo and are subject

 to full review.” State v. Biber, 365 N.C. 162, 168 (2011).

¶ 40 First, we conclude that the trial court acted within its broad discretion in

 exercising jurisdiction over plaintiff’s Chapter 50B complaint because plaintiff’s

 amended notice of dismissal functionally served as a motion for equitable relief under

 Rule 60(b), and plaintiff’s amendment to the complaint—which defendant consented

 to—functionally served as a refiling. Second, we hold that plaintiff properly preserved

 the constitutional issue for appellate review. Third, we conclude that defendant did

 not properly preserve her joinder argument because it was first raised by the Court

 of Appeals dissent without being argued before that court. Accordingly, we modify

 and affirm the ruling of the Court of Appeals below reversing the trial court’s denial

 of plaintiff’s Chapter 50B complaint.

 A. Jurisdiction

¶ 41 First, defendant asserts that the trial court and the Court of Appeals lacked

 jurisdiction due to plaintiff’s voluntary dismissal of the Chapter 50B complaint and

 plaintiff’s failure to include the dismissal in the record on appeal. We disagree.

¶ 42 Generally, trial court judges enjoy broad discretion in the efficient

 administration of justice and in the application of procedural rules toward that goal.
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 See Miller v. Greenwood, 218 N.C. 146, 150 (1940) (“It is within [a judge’s] discretion

 to take any action [toward ensuring a fair and impartial trial] within the law and so

 long as he [or she] does not impinge upon [statutory] restrictions.”) Indeed,

 [i]t is impractical and would be almost impossible to have
 legislation or rules governing all questions that may arise
 on the trial of a case. Unexpected developments, especially
 in the field of procedure, frequently occur. When there is no
 statutory provision or well recognized rule applicable, the
 presiding judge is empowered to exercise his [or her]
 discretion in the interest of efficiency, practicality, and
 justice.

 Shute v. Fisher, 270 N.C. 247, 253 (1967).

¶ 43 Accordingly, rather than erecting hurdles to the administration of justice,

 “[t]he Rules of Civil Procedure [reflect] a policy to resolve controversies on the merits

 rather than on technicalities of pleadings.” Quackenbush v. Groat, 271 N.C. App. 249,

 253 (2020) (cleaned up).

 A suit at law is not a children’s game, but a serious effort
 on the part of adult human beings to administer justice;
 and the purpose of process is to bring parties into court. If
 [procedural filings use] such terms that every intelligent
 person understands [what] is meant, it has fulfilled its
 purpose; and courts should not put themselves in the
 position of failing to recognize what is apparent to everyone
 else.

 Harris v. Maready, 311 N.C. 536, 544 (1984) (cleaned up).

¶ 44 These general principles are particularly important within the context of

 DVPOs. In fact, the remedies of N.C.G.S. Chapter 50B are specifically written with
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 ease of access for pro se complainants in mind. For instance, N.C.G.S. § 50B-2(a) notes

 that “[a]ny aggrieved party entitled to relief under this Chapter may file a civil action

 and proceed pro se, without the assistance of legal counsel.” Further, subsection (d)

 of that statute is dedicated entirely to establishing procedures for “Pro se Forms[:]”

 The clerk of superior court of each county shall provide to
 pro se complainants all forms that are necessary or
 appropriate to enable them to proceed pro se pursuant to
 this section. The clerk shall, whenever feasible, provide a
 private area for complainants to fill out forms and make
 inquiries. The clerk shall provide a supply of pro se forms
 to authorized magistrates who shall make the forms
 available to complainants seeking relief under . . . this
 section.

 N.C.G.S. § 50B-2(d).

¶ 45 This statutory emphasis recognizes and accounts for the factual reality of

 domestic violence adjudication: survivors of domestic violence who turn to courts for

 protection typically do so shortly after enduring physical or psychological trauma,

 and without the assistance of legal counsel. Calaf, 21 Law & Ineq. at 170; Kim &

 Starsoneck at 57. As such, “[t]he procedures under N.C.[G.S.] § 50B-2 are intended

 to provide a method for trial court judges or magistrates to quickly provide protection

 from the risk of acts of domestic violence by means of a process which is readily

 accessible to pro se complainants.” Hensey, 201 N.C. App. at 63.

¶ 46 Rule 60 of the North Carolina Rules of Civil Procedure provides trial courts

 with a procedure through which they can provide equitable relief from various
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 judgments, orders, or proceedings. N.C.G.S. § 1A-1, R. 60. Specifically, Rule 60(b)

 establishes that “[o]n motion and upon such terms as are just, the court may relieve

 a party or [her] legal representative from a final judgment, order, or proceeding for

 . . . mistake, inadvertence, surprise, or excusable neglect.” Id.

¶ 47 Here, the trial court acted well within its broad discretion, and with the benefit

 of the full record before it, when exercised jurisdiction over plaintiff’s Chapter 50B

 DVPO complaint. Specifically, plaintiff’s amended notice of voluntary dismissal—in

 which she struck through and handwrote “I do not want to dismiss this action” on the

 form she had inadvertently or mistakenly filed thirty-nine minutes previously—

 served as functional Rule 60(b) motion through which the trial court could, and did,

 grant equitable relief. There is plainly no doubt as to plaintiff’s intentions as

 expressed through the amended form: she “d[id] not want to dismiss th[e] action.”

 Likewise, when the trial court allowed plaintiff to amend her Chapter 50B

 complaint—without objection from defendant—at the 7 June hearing on the merits,

 it reasonably could have considered this amendment as, in essence, a refiling after a

 voluntary dismissal.1 While it may have been preferable for plaintiff to have filed an

 official 60(b) motion or a new Chapter 50B complaint for formality’s sake, her

 amendment nevertheless expressed her intention to proceed with the complaint “in

 1 In light of defendant’s consent to this amendment, there can be no doubt that she

 had ample notice that plaintiff was pursuing a DVPO under Chapter 50B.
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 such terms that every intelligent person understands [what] is meant, [and therefore]

 has fulfilled its purpose; and courts should not put themselves in the position of

 failing to recognize what is apparent to everyone else.” Harris, 311 N.C. at 544.

 Indeed, “[t]o hold otherwise . . . would be to exalt the form over the substance.”

 Fidelity & Casualty Co., 200 N.C. at 538.

¶ 48 Plaintiff here is exactly the type of complainant that the pro se provisions of

 Chapter 50B contemplate: one who is navigating the complex arena of legal procedure

 for the first time, without the assistance of legal counsel, soon after experiencing

 significant trauma. At every turn on 31 May 2018, plaintiff diligently followed the

 direction of court staff: in filing her initial Chapter 50B forms that morning, in

 completing the stack of new forms including the notice of voluntary dismissal at 3:12

 p.m., and in amending and refiling that form thirty-nine minutes later to express her

 intention to proceed with her complaint. When the trial court exercised jurisdiction

 over plaintiff’s Chapter 50B complaint, it did so with the benefit of the full record

 before it, including the court file (the trial court noted it was entering an order

 denying the DVPO “after hearing from the parties and reviewing the file”) which held

 the amended notice of voluntary dismissal. It was squarely within the discretion of

 the trial court to understand the plain intent of plaintiff’s amended notice of

 voluntary dismissal as a Rule 60(b) motion for equitable relief or her amended

 Chapter 50B complaint as a functional refiling, and to subsequently exercise its
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 jurisdiction. To be clear, this is not to say that plaintiff, acting without legal counsel

 in the harried setting of the clerk’s office, intended for her amendment to the

 voluntary dismissal form to serve as a formal 60(b) motion, or that she or her counsel

 intended for the Chapter 50B complaint amendment at the 7 June hearing to serve

 as a formal refiling. They likely did not. Rather, we hold that it was within the trial

 court’s broad discretion—with the benefit of the full record before it—to treat these

 two amendments as a functional 60(b) motion or refiling in light of the plaintiff’s plain

 intention to move forward with her Chapter 50B complaint.2 While we cannot know

 precisely from the record whether the trial court considered these procedures when

 it determined that it had jurisdiction, its decision to exercise jurisdiction itself

 evidences that the court understood plaintiff’s plain intention to proceed. It is not the

 job of this Court to second-guess the trial court’s determination of its own jurisdiction

 when that determination was supported by competent evidence and practical

 common sense. Accordingly, the trial court did not err in exercising jurisdiction, and

 the Court of Appeals did not err in its subsequent review.

 B. Preservation

¶ 49 Second, defendant asserts that plaintiff failed to preserve the constitutional

 2 While the dissent warns that this understanding of the trial court’s discretion “will

 disrupt the orderly flow of cases through our trial courts[,]” the facts here prove the opposite:
 it ensures that common sense and the smooth functioning of vital remedial procedures, like
 those protecting survivors of domestic violence, will not be thwarted by overly technical
 scrutiny of that discretion.
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 issue for appeal. Again, we disagree.

¶ 50 Rule 10(a)(1) of the North Carolina Rules of Appellate Procedure establishes

 that

 [i]n order to preserve an issue for appellate review, a party
 must have presented to the trial court a timely request,
 objection, or motion, stating the specific grounds for the
 ruling the party desired the court to make if the specific
 grounds were not apparent from the context. It is also
 necessary for the complaining party to obtain a ruling upon
 the party’s request, objection, or motion. Any such issue
 that was properly preserved for review by action of counsel
 taken during the course of proceedings in the trial tribunal
 by objection noted . . . may be made the basis of an issue
 presented on appeal.

 Put differently, Rule 10(a)(1) creates two distinct requirements for issues

 preservation: (1) a timely objection clearly (by specific language or by context) raising

 the issue; and (2) a ruling on that issue by the trial court. These requirements are

 grounded in judicial efficiency; they “prevent[ ] unnecessary retrials by calling

 possible error to the attention of the trial court so that the presiding judge may take

 corrective action if it is required.” State v. Bursell, 372 N.C. 196, 199 (2019).

 “Practically speaking, Rule 10(a)(1) contextualizes the objection for review on appeal,

 thereby enabling the appellate court to identify and thoroughly consider the specific

 legal question raised by the objecting party.” Id.

¶ 51 Notably, Rule 10(a)(1) does not require a party to recite certain magic words in

 order to preserve an issue; rather, it creates a functional requirement of bringing the
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 trial court’s attention to the issue such that the court may rule on it. See State v.

 Garcia, 358 N.C. 382, 410 (2004) (noting that because an issue was not raised at trial,

 “the trial court was denied the opportunity to consider, and, if necessary, to correct

 the error.”) For instance, in State v. Murphy, this Court determined that “[a]lthough

 the issue of defendant’s invocation of his right to remain silent was not clearly and

 directly presented to the trial court, . . . the defendant’s theory was implicitly

 presented to the trial court and thus [was properly preserved for appellate review].”

 342 N.C. 813, 822 (1996). Contrastingly, in cases where this Court has determined

 that an issue was not properly preserved, the records tend to include no reference to

 the issue at trial. See, e.g., Bursell, 372 N.C. at 200 (noting “the absence of any

 reference to the Fourth Amendment, Grady[,] or other relevant SBM case law,

 privacy, or reasonableness”); Garcia, 358 N.C. at 410 (noting that “defendant did not

 raise this constitutional issue at trial.”); State v. McKenzie, 292 N.C. 170, 176 (1997)

 (noting that because “[n]o argument was made in the trial court on that issue . . . the

 trial court was wholly unaware” of the issue.).

¶ 52 Regarding the second requirement of Rule 10(a)(1), this Court has observed

 that appellate courts “will not pass upon a constitutional question unless it

 affirmatively appears that such question was raised and passed upon in the court

 below.” State v. Jones, 242 N.C. 563, 564 (1955). For instance, in State v. Dorsett, this

 Court declined to consider a constitutional issue after the trial court “expressly
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 declined to rule on th[e] question.” 272 N.C. 227, 229 (1967).

¶ 53 Here, plaintiff properly raised and received a ruling on her claim that it would

 be unconstitutional to deny relief under N.C.G.S. Chapter 50B because she was in a

 same-sex dating relationship. Thus, the question of whether DVPO protection could

 be denied to those in same-sex dating relationships was properly preserved for

 appeal. First, there can be no doubt that plaintiff’s counsel properly raised the issue

 during the hearing. Specifically, plaintiff’s counsel asserted that “[Chapter] 50B[ ] is

 unconstitutional as it’s written post the same-sex marriage equality case in Obergefell

 and . . . there’s no rational basis at this point to have a statute that limits dating

 relationships to folks of opposite sex.” In this statement, plaintiff’s counsel expressly:

 (1) asserted that the judge’s application of the statute in question was

 unconstitutional; (2) cited by name the landmark United States Supreme Court

 ruling on the unconstitutionality of same-sex marriage prohibitions under the

 Fourteenth Amendment, see Obergefell v. Hodges, 576 U.S. 644 (2015); and (3) recited

 a specific legal standard associated with judicial analysis under that amendment.

 Contrary to the claim of the dissenting opinion below that plaintiff’s counsel’s

 statement was merely a “cryptic reference to Obergefell[,]” we understand it to clearly

 and explicitly challenge the constitutionality of the application of the statute in

 question under well-established Due Process and Equal Protection doctrines.

¶ 54 Next, when asked by the trial court if any other jurisdictions have struck down
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 similar DVPO restrictions, plaintiff’s counsel noted a recent case in which the South

 Carolina Supreme Court, citing Obergefell, ruled that the sections of their state’s

 DVPO statute that excluded people in same-sex relationships from protection were

 unconstitutional under the Due Process and Equal Protection Clauses of the

 Fourteenth Amendment to the U.S. Constitution. Doe v. State, 421 S.C. 490, 495–96,

 507 n.12 (2017).

¶ 55 Finally, the trial court’s subsequent written order explicitly acknowledged that

 plaintiff had raised this constitutional issue, noting that

 [p]laintiff, through her counsel, argued that she should be
 allowed to proceed on her request for a [DVPO] because the
 current [N.C.G.S. §] 50B-1(b) is unconstitutional after the
 United States Supreme Court decision in Obergefell v.
 Hodges and that there is no rational basis for denying
 protection to victims in same-sex dating relationships . . . .

 Accordingly, plaintiff clearly raised her constitutional argument at trial, thus

 satisfying the first requirement for issue preservation under Rule 10(a)(1).

¶ 56 Second, the record makes clear that the trial court sufficiently ruled on the

 constitutional issue, thus satisfying the second requirement for issue preservation

 under Rule 10(a)(1). Specifically, the trial court “passed upon” this issue in three

 distinct places: (1) during the hearing; (2) in its subsequent form order; and (3) in its

 subsequent written order.

¶ 57 First, the trial court ruled upon plaintiff’s constitutional argument during the

 hearing. In response to plaintiff’s counsel’s request “that Your Honor consider
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 allowing [plaintiff] to proceed with her [DVPO] case” in light of the constitutional

 argument, the trial court stated: “Without a more expansive argument on

 constitutionality, I won’t do it. I think there is room for that argument. I think that

 with some more presentation that maybe we could get there, but I don’t think on the

 simple motion I’m ready to do that.” Plainly, this exchange constitutes the trial court

 making a determination, or “passing upon,” plaintiff’s argument.

¶ 58 Second, the trial court ruled upon plaintiff’s constitutional argument within its

 subsequent form order denying plaintiff’s DVPO motion. Specifically, after noting

 that “had the parties been of opposite genders, th[e]se facts would have supported the

 entry of a [DVPO,]” the trial court observed that the General Assembly’s 2017

 amendment to Chapter 50B “was made subsequent to the United Statutes Supreme

 Court decision in Obergefell v. Hodges, 567 U.S. [644,] (2015), and yet the legislature

 did not amend the definition of personal relationship to include dating partners of the

 same sex.” Again, this statement indicates the trial court’s rejection of, and thus

 ruling upon, plaintiff’s constitutional argument in light of legislative intent.

¶ 59 Third, the trial court ruled upon plaintiff’s constitutional argument within its

 subsequent written order. Specifically, after summarizing plaintiff’s constitutional

 argument and noting Chapter 50B’s legislative history and exclusion of same-sex

 dating relationships from DVPO protection, the trial court stated:

 5. The [c]ourt must consider whether it has jurisdiction to
 create a cause of action that does not exist and to enter an
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 order under this statute when the statute specifically
 excludes it. The difficult answer to this question is no, it
 does not. The General Assembly has the sole authority to
 pass legislation that allows for the existence of any
 [DVPO]. The legislature has not extended this cause of
 action to several other important family relationships
 including siblings, aunts, uncles, “step” relatives, or in-
 laws.

 6. In this context, the [c]ourts only have subject matter
 jurisdiction and the authority to act and enjoin a defendant
 when the legislature allows it. . . .

 As above, this statement indicates the trial court’s rejection of plaintiff’s

 constitutional argument on the grounds of legislative intent.

¶ 60 Finally, it is also worth noting that in her only submission in this case from

 the trial court’s initial ruling to her notice of appeal to this Court, defendant directly

 engaged in the constitutional issue raised by plaintiff at trial. Specifically, defendant

 asserted “that the LGBT community is asking for special treatment[ ] in this

 proceeding . . . [and] should not be given equal access to protection under law as

 heterosexual relationships.” This direct engagement by defendant in the

 constitutional issue further indicates that the issue was properly preserved for

 appellate review.

¶ 61 Accordingly, plaintiff’s argument regarding the constitutionality of Chapter

 50B as applied to DVPO complainants in same-sex dating relationships was properly

 preserved for appellate review. We therefore hold that the Court of Appeals did not

 err in determining the same.
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 C. Joinder

¶ 62 Third, defendant contends that the Court of Appeals ruling must be vacated

 and remanded for the mandatory joinder of the North Carolina General Assembly

 under Rule 19(d) of the North Carolina Rules of Civil Procedure. Because this

 argument was not raised by defendant below and was first raised by the Court of

 Appeals dissent, though, it is not properly before this Court, and we therefore decline

 to consider it. In any event, even assuming arguendo that mandatory joinder under

 Rule 19(d) need not be raised below in order to be considered here, joining the

 legislative leaders is not required here.

¶ 63 “This Court has long held that issues and theories of a case not raised below

 will not be considered on appeal . . . .” Westminster Homes, Inc. v. Town of Cary Zoning

 Bd. of Adjustment, 354 N.C. 298, 309 (2001); see, e.g., Smith v. Bonney, 215 N.C. 183,

 184–85 (1939) (noting that “[t]o sustain the assignments of error would be to allow

 the appellant to try the case in the Superior Court upon one theory and to have the

 Supreme Court to hear it upon a different theory.”). Indeed, when “[a]n examination

 of the record discloses that the cause was not tried upon that theory [below], . . . the

 law does not permit parties to swap horses between courts in order to get a better

 mount in the Supreme Court.” Weil v. Herring, 207 N.C. 6, 10 (1934).

¶ 64 Rule 19(d) of the North Carolina Rules of Civil Procedure establishes that

 “[t]he Speaker of the House of Representatives and the President Pro Tempore of the
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 Senate, as agents of the State through the General Assembly, must be joined as

 defendants in any civil action challenging the validity of a North Carolina statute or

 provision of the North Carolina Constitution under State or federal law.” This Rule,

 however, must be read in harmony with its preceding Rules. Specifically, Rule

 12(h)(2) establishes that “a defense of failure to join a necessary party . . . may be

 made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment

 on the pleadings, or at the trial on the merits.” Further, “[a]lthough a defense of lack

 of subject matter jurisdiction may not be waived and may be asserted for the first

 time on appeal[,] a failure to join a necessary party does not result in a lack of

 jurisdiction over the subject matter of the proceeding.” Stancil v. Bruce Stancil

 Refrigeration, Inc., 81 N.C. App. 567, 574 (1986) (citing Wright & Miller, Fed. Practice

 and Procedure: Civil § 1392 (1969)), disc. review denied, 318 N.C. 418, (1986).

 Accordingly, and in alignment with our well-established prohibition of raising new

 issues on appeal, “[t]he defense of failure to join a necessary party must be raised

 before the trial court and may not be raised for the first time on appeal.” Phillips v.

 Orange County Health Dept., 237 N.C. App. 249, 255 (2017).

¶ 65 Here, defendant did not raise the issue of necessary joinder of the legislature

 under Rule 19(d) before the trial court. Further, neither defendant nor the appointed

 amicus counsel raised this issue before the Court of Appeals. Indeed, the first time

 that this issue was raised in this case was by the dissenting opinion below. See M.E.,
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 275 N.C. App. at 595 (Tyson, J., dissenting). Specifically, the Court of Appeals dissent

 cites this Court’s ruling in Booker v. Everhart, 294 N.C. 146, 158 (1978), for the

 proposition that “neither the district court, nor [the Court of Appeals], can address

 the underlying merits of [p]laintiff’s assertions until this mandatory joinder defect is

 cured.” M.E., 275 N.C. App. at 595 (Tyson, J., dissenting). In Booker, however, the

 defendants directly raised their necessary joinder issue before the trial court by

 making a motion to dismiss under Rule 12(b)(7). Booker, 294 N.C. at 149. Here,

 contrastingly, the necessary joinder issue was raised neither by defendant nor by the

 trial court ex meru motu and was not mentioned until the Court of Appeals dissent.

 Accordingly, this issue is not properly before this Court, and we therefore decline to

 consider it. To the extent that Booker suggests that an appellate court must correct a

 necessary joinder defect ex meru motu before a ruling on the merits, it is overruled.

¶ 66 In any event, even assuming arguendo that mandatory joinder under Rule

 19(d) may be raised for the first time on appeal, joining the legislative leaders is not

 required here because plaintiff’s arguments do not fall within the purview of Rule

 19(d). Rule 19(d) establishes that legislative leaders “must be joined as defendants in

 any civil action challenging the validity of a North Carolina statute or provision of

 the North Carolina Constitution under State or federal law.” Here, contrastingly,

 plaintiff’s complaint was brought under N.C.G.S. Chapter 50B for the sole purpose of

 obtaining a DVPO through a judicial proceeding under that chapter, not as an action
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

 challenging the facial validity of that statute. Although plaintiff asserted an as-

 applied constitutional defense in order to prevent the dismissal of her action, this

 alone does not convert her action seeking a DVPO into a “civil action challenging the

 validity of a North Carolina statute.”

¶ 67 Accordingly, even if defendant’s Rule 19(d) joinder argument could be raised

 for the first time on this appeal, it is meritless within the context of the present case.

 III. Court of Appeals’ Constitutional Ruling Undisturbed

¶ 68 Finally, we note that defendant has not challenged the Court of Appeals’

 substantive ruling on the merits of the constitutional issue. Accordingly, we do not

 address the Court of Appeals’ ruling that Chapter 50B’s exclusion of complainants in

 same-sex relationships from DVPO protection is unconstitutional as applied to

 plaintiff and those similarly situated, and this portion of the holding stands

 undisturbed.

 IV. Conclusion

¶ 69 As explained above, we hold that the trial court acted within its broad

 discretion in exercising its jurisdiction over plaintiff’s Chapter 50B DVPO complaint

 where plaintiff’s amended form served as a functional Rule 60(b) motion for equitable

 relief from her mistaken or inadvertent dismissal filed thirty-nine minutes

 previously, and the Court of Appeals did not err in determining the same. Further,

 we hold that plaintiff’s constitutional argument was properly preserved for appellate
 M.E. V. T.J.

 2022-NCSC-23

 Opinion of the Court

review under Rule 10(a)(1). Next, we hold that defendant’s Rule 19(d) necessary

joinder argument is not properly before this Court, and in any event is meritless as

intervention of legislative leaders, though optional, was not mandatory in the context

of plaintiff’s Chapter 50B complaint. Finally, we note that because the Court of

Appeals’ substantive constitutional ruling was not at issue before this court, its

decision on this issue remains undisturbed.

 MODIFIED AND AFFIRMED.
 Justice BERGER dissenting.

¶ 70 The Rules of Civil Procedure “govern the procedure in the superior and district

 courts of the State of North Carolina in all actions and proceedings of a civil nature

 except when a differing procedure is prescribed by statute.” N.C.G.S. § 1A-1, Rule 1

 (2021). These rules exist to provide order and certainty for all parties involved in

 civil litigation. There is a predictable outcome for this case if the Rules of Civil

 Procedure are respected. However, because the majority fails to adhere to these basic

 rules, and because the majority’s newly crafted “mistaken or inadvertent dismissal”

 rule cannot be found in the Rules of Civil Procedure, I respectfully dissent.

¶ 71 A complaint seeking entry of a domestic violence protective order pursuant to

 Chapter 50B is a civil action. N.C.G.S. § 50B-2(a) (2021). “A civil action is commenced

 by filing a complaint with the court.” N.C.G.S. § 1A-1, Rule 3(a) (2021). Any action

 or claim may be dismissed by the plaintiff without order of court by filing a notice of

 dismissal at any time before the plaintiff rests his case. N.C.G.S. § 1A-1, Rule 41(a)

 (2021).

¶ 72 “It is well settled that a Rule 41(a) dismissal strips the trial court of authority

 to enter further orders in the case, except as provided by Rule 41(d) which authorizes

 the court to enter specific orders apportioning and taxing costs.” Brisson v. Kathy A.

 Santoriello, M.D., P.A., 351 N.C. 589, 593, 528 S.E.2d 568, 570 (2000) (cleaned up).

 “After a plaintiff takes a Rule 41(a) dismissal, there is nothing the defendant can do
 M.E. V. T.J.

 2022-NCSC-23

 Berger, J., dissenting

 to fan the ashes of that action into life, and the court has no role to play.” Id. (cleaned

 up). “A universal principle as old as the law is that the proceedings of a court without

 jurisdiction of the subject matter are a nullity.” Burgess v. Gibbs, 262 N.C. 462, 465,

 137 S.E.2d 806, 808 (1964).

¶ 73 “An application to the court for an order shall be by motion which, unless made

 during a hearing or trial or at a session at which a cause is on the calendar for that

 session, shall be made in writing, shall state with particularity the ground therefor,

 and shall set forth the relief or order sought.” N.C.G.S. § 1A-1, Rule 7(b)(1) (2021).

 On motion and upon such terms as are just, the court may relieve a party from a final

 judgment, order, or proceeding for mistake, inadvertence, surprise, or excusable

 neglect. N.C.G.S. § 1A-1, Rule 60(b) (2021). However, “[a] voluntary dismissal with

 prejudice, or a voluntary dismissal without prejudice, once a year has elapsed and

 the action cannot be refiled, constitutes a final adjudication subject to relief under

 [Rule 60(b)].” G. Gray Wilson, 2 North Carolina Civil Procedure § 60-2 (4th ed. 2021)

 (footnotes omitted).

¶ 74 On May 31, 2018, plaintiff commenced her Chapter 50B action against

 defendant upon the filing of her “Complaint and Motion for Domestic Violence

 Protective Order.” Later that day, plaintiff dismissed her Chapter 50B action against

 defendant by filing a notice of voluntary dismissal. Plaintiff’s voluntary dismissal of

 the Chapter 50B action was filed eight minutes after she filed a Chapter 50C
 M.E. V. T.J.

 2022-NCSC-23

 Berger, J., dissenting

 “Complaint for No-Contact Order for Stalking or Nonconsensual Sexual Conduct.”

 Plaintiff subsequently attempted to withdraw the voluntary dismissal she had filed

 by striking through the paper with a diagonal line, writing the word “amended” at

 the top along with a sentence at the bottom explaining “I strike through this

 voluntary dismissal. I do not want to dismiss this action.” Plaintiff filed these various

 documents pro se and the trial court granted her motion for a Chapter 50C temporary

 no-contact order, denied her motion for a Chapter 50B emergency DVPO, and set the

 matter for a plenary hearing on the merits for June 7, 2018. As defendant was not

 present at the initial hearing, she was not provided with notice of the complaints until

 after the May 31, 2018. Defendant was never served with the voluntary dismissal of

 the Chapter 50B action.

¶ 75 At the June 7, 2018, hearing, plaintiff was represented by two attorneys.

 Defendant did not file an answer to either complaint, appeared pro se, and did not

 raise any objections during the hearing. In fact, according to the transcript,

 defendant spoke just once during the hearing in which she acknowledged to the trial

 court her understanding of the Chapter 50C no-contact order. Despite the fact that

 plaintiff’s voluntary dismissal had already “strip[ped] the trial court of authority,”

 Brisson, 351 N.C. at 593, 528 S.E.2d at 570, over the Chapter 50B claim, the trial

 court entered an order dismissing the Chapter 50B complaint on other grounds and

 granted the Chapter 50C no-contact order.
 M.E. V. T.J.

 2022-NCSC-23

 Berger, J., dissenting

¶ 76 The majority does not take issue with the trial court’s lack of jurisdiction.

 Rather, the majority relies on the notion that trial courts have broad discretion to

 take any action within the law to ensure a fair and impartial trial “so long as he [or

 she] does not impinge upon [statutory] restrictions.” The majority further states that

 “[w]hen there is no statutory provision or well recognized rule applicable, the

 presiding judge is empowered to exercise his [or her] discretion in the interest of

 efficiency, practicality, and justice.” One glaring gap in this logic, however, is that

 there is a statutory provision and well recognized rule such that a trial court’s

 exercise of jurisdiction after a complaint has been voluntarily dismissed does impinge

 upon such statutory restrictions. See N.C.G.S. § 1A-1, Rule 41(a); Brisson, 351 N.C.

 at 593, 528 S.E.2d at 570.

¶ 77 According to the majority, plaintiff’s voluntary dismissal “served as [a]

 functional Rule 60(b) motion through which the trial court could, and did, grant

 equitable relief.” Untethered to the rules, the majority divines the intent of plaintiff,

 stating that “courts should not put themselves in the position of failing to recognize

 what is apparent to everyone else.” Thus, the majority reasons, “[i]t was squarely

 within the discretion of the trial court to understand the plain intent of plaintiff’s

 amended notice of voluntary dismissal as a Rule 60(b) motion for equitable relief or

 her amended Chapter 50B complaint as a functional refiling, and to subsequently

 exercise its jurisdiction.” However, this approach is contrary to the Rules of Civil
 M.E. V. T.J.

 2022-NCSC-23

 Berger, J., dissenting

 Procedure as plaintiff filed no motion with the Court, there was no final judgment,

 and her attorneys never requested the relief granted by the majority today. N.C.G.S.

 § 1A-1, Rule 7(b)(1), N.C.G.S. § 1A-1, Rule 60(b). The idea that plaintiff’s filing was

 a motion pursuant to Rule 60(b) likely comes as a surprise to the trial court and both

 of plaintiff’s counsel below. Nowhere in the transcript or the trial court’s order is it

 intimated that the trial court “underst[ood] the plain intent of plaintiff’s amended

 notice of voluntary dismissal as a Rule 60(b) motion for equitable relief or her

 amended Chapter 50B complaint as a functional refiling.” Indeed, neither of

 plaintiff’s attorneys argued before the trial court that the diagonal strikethrough and

 statement on the voluntary dismissal should in any way be considered as a Rule 60(b)

 motion. If neither the trial court nor plaintiff’s lawyers recognized plaintiff’s

 “mistaken or inadvertent dismissal” as a Rule 60(b) motion, it is difficult to

 comprehend how “every intelligent person underst[ood what was] meant.” There

 plainly was never a subsequent motion filed by the plaintiff upon which the trial court

 could grant the relief allowed by the majority.

¶ 78 It is interesting that in one breath the majority claims there is “no doubt as to

 plaintiff’s intentions” and in another, the majority concedes that it “cannot know

 precisely from the record whether the trial court considered [the amendment to the

 voluntary dismissal as a Rule 60(b) motion or a refiling of the Chapter 50B complaint]

 when it determined that it had jurisdiction.” Further, according to the majority,
 M.E. V. T.J.

 2022-NCSC-23

 Berger, J., dissenting

 plaintiff and her counsel “likely did not” intend for her amendment to the voluntary

 dismissal or her amended Chapter 50B complaint to serve as a 60(b) motion or a

 formal refiling, respectively. Even assuming “every intelligent person” should

 understand what plaintiff intended based on documents in the court file, the majority

 is apparently uncertain itself about whether plaintiff was refiling her Chapter 50B

 complaint or requesting relief pursuant to Rule 60(b).1

¶ 79 Rule 60(b) is meant to relieve a party from a final judgment, order, or

 proceeding. N.C.G.S. § 1A-1, Rule 60(b). It strains credibility for this Court to

 contend that plaintiff’s “inadvertent or mistaken voluntary dismissal” was in fact a

 Rule 60(b) motion as no final judgment had been entered, and plaintiff was ineligible

 for such relief under the plain wording of the rule. See Robinson v. General Mills

 Restaurants, Inc., 110 N.C. App. 633, 637, 430 S.E.2d 696, 699, review allowed 334

 N.C. 623, 435 S.E.2d 340 (1993), review denied as improvidently granted 335 N.C.

 763, 440 S.E.2d 274 (1994) (holding that “once the one-year period for refiling an

 action has elapsed and the action can no longer be resurrected, the voluntary

 dismissal acts as a final adjudication for purposes of Rule 60(b)”); see also Wilson, 2

 North Carolina Civil Procedure § 60-2 (footnotes omitted) (a voluntary dismissal is

 1 Treating plaintiff’s voluntary dismissal as a new civil action disregards the filing

 requirements set forth in Rule 3; issuance of a summons as required by Rule 4; service
 requirements in Rule 5; and the fact that, if this were new action, the Clerk of Court would
 have assigned a separate file number.
 M.E. V. T.J.

 2022-NCSC-23

 Berger, J., dissenting

 not a “final adjudication subject to relief under [Rule 60(b)]” unless “a year has

 elapsed and the action cannot be refiled[.]”).

¶ 80 In reaching their decision, the majority ignores that the Rules of Civil

 Procedure apply to Chapter 50B proceedings. N.C.G.S. § 1A-1, Rule 1; N.C.G.S. §

 50B-2(a). Instead, the majority bases its reasoning on the purpose of Chapter 50B —

 “provid[ing] a method for trial court judges or magistrates to quickly provide

 protection from the risk of acts of domestic violence by means of a process which is

 readily accessible to pro se complainants.” While the purpose of the statute is

 important, it does not provide a license to ignore the Rules of Civil Procedure, or the

 due process rights of an adverse party.

¶ 81 The majority proclaims that “[p]laintiff here is exactly the type of complainant

 that the pro se provisions of Chapter 50B contemplate: one who is navigating the

 complex arena of legal procedure for the first time, without the assistance of legal

 counsel, soon after experiencing significant trauma.” Notably, however, the majority

 fails to discuss that plaintiff was represented by not one, but two attorneys at the

 hearing. Cf. Brown v. Kindred Nursing Centers East, L.L.C., 364 N.C. 76, 84, 692

 S.E.2d 87, 92 (2010) (“[I]t it well settled that ‘the rules [of civil procedure] must be

 applied equally to all parties to a lawsuit, without regard to whether they are

 represented by counsel.’ ”).

¶ 82 Importantly, defendant never received notice that plaintiff had filed a
 M.E. V. T.J.

 2022-NCSC-23

 Berger, J., dissenting

 voluntary dismissal in the Chapter 50B action. In addition, and unsurprisingly,

 defendant had no notice that the trial court was considering a Rule 60(b) motion,

 again, because plaintiff’s two attorneys did not make the motion and the trial court

 did not rule on any such motion. The majority’s professed concern for pro se litigants

 does not seem to apply to this defendant, who was, ironically, the only party to appear

 pro se.

¶ 83 The law going forward appears to be that, even if the Rules of Civil Procedure

 yield a particular result, trial courts are free reach a contrary outcome so long as an

 “intelligent person understands [what] is meant[.]” But see Goins v. Puleo, 350 N.C.

 277, 281, 512 S.E.2d 748, 751 (1999) (stating that “the Rules of Civil Procedure

 promote the orderly and uniform administration of justice, and all litigants are

 entitled to rely on them”); Pruitt v. Wood, 199 N.C. 788, 790, 156 S.E. 126, 127 (1930)

 (“When litigants resort to the judiciary for the settlement of their disputes, they are

 invoking a public agency, and they should not forget that rules of procedure are

 necessary and must be observed[.]”).

¶ 84 The Rules of Civil Procedure either apply or they don’t. The rules provide

 certainty for all parties involved in civil litigation. By failing to adhere to these basic

 rules, the majority makes our system of justice less predictable and causes our law to

 become more unsettled. The majority’s new “mistaken or inadvertent dismissal” rule

 is antithetical to our adversarial system and will disrupt the orderly flow of cases
 M.E. V. T.J.

 2022-NCSC-23

 Berger, J., dissenting

through our trial courts under the guise of “facilitat[ing] access to justice[.]” This is

not a case in which the record shows that the parties and trial court knew that relief

under Rule 60(b) was sought or where the trial court granted relief under Rule 60(b).

Thus, the majority’s approach shifts appellate review from the text of the rules and

the arguments of the parties in the trial court to allow reverse engineered arguments

based on sympathies and desired results.

 Chief Justice NEWBY and Justice BARRINGER join in this dissenting

opinion.